IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN ELLIOTT FIELDS,

Petitioner, No. CIV S-04-0454 FCD JFM P

vs.

AL K. SCRIBNER, et al.,

Respondents. FINDINGS AND RECOMMENDATIONS

_________________________________/

Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his February 22, 2000 conviction on charges of first degree burglary, Cal. Penal Code §§ 459, 460 (count two), and aggravated assault, Cal. Penal Code § 245(a)(1) (count three). The jury found true that petitioner personally used a knife. Cal. Penal Code § 12022(b)(1), and personally inflicted great bodily injury, Cal. Penal Code § 12022.7(a). The jury acquitted petitioner of attempted deliberate and premeditated murder and attempted first degree robbery (counts one and four). On April 17, 2000, the trial judge found true that petitioner had sustained two prior strikes and one prior serious felony conviction, and that petitioner served four prior prison terms. (CT at 467; RT at 888-90.) On June 19, 2000, petitioner was sentenced on count 3 to a term of 25 years to life, consecutive to a 13-year aggregate enhancement term. (CT at 292, 490-91.)

Petitioner's conviction on count two, burglary, was reversed on appeal.

Petitioner raised six claims in his petition, filed February 2, 2004, that his prison sentence violates the Constitution. On February 8, 2007, petitioner was granted an extension of time to file a traverse, which he filed on March 12, 2007. Respondent filed a reply on March 26, 2007.

In his traverse, petitioner withdrew claims three through six. Accordingly, the court will now address petitioner's two remaining claims, that petitioner suffered ineffective assistance of counsel in violation of his Sixth Amendment rights.

FACTS[1]

> According to the testimony of the victim, Coy Williams (also known as Junior), and his guest, Peter Pascua, David Batts knocked on the door of Williams's Stockton apartment at about 5:30 a.m. on October 9, 1999. According to Williams, when he opened the door, Batts and [petitioner] rushed in. Batts grabbed Williams, pushed him into the kitchen, and asked him where his money and gun were. When Williams asked Batts what he was talking about, Batts pulled out a knife and stabbed Williams in the side. Williams tried to grab the knife and cut his hand on it. [Petitioner] then hit Williams on the head with an iron pot he had taken out of the sink, knocking Williams to the floor. Batts put his foot on Williams's throat and continued to demand Williams's money and gun. Williams told Batts to go to his neighbor's apartment. Batts gave the knife to [petitioner] and left.
>
> As soon as Batts left the apartment, Williams told Pascua to run. When [petitioner] tried to stop Pascua, Williams tried to grab [petitioner], and [petitioner] stabbed Williams twice with the knife. Shortly thereafter, Batts returned to the apartment; he and [petitioner] then fled.
>
> Batts and [petitioner] were eventually arrested and charged with attempted murder, burglary, assault with a deadly weapon or by means of force likely to produce great bodily injury, and attempted robbery.

(People v. Fields, slip op. at 2.)

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Fields, No. C036427 (August 27, 2001), a copy of which is provided in records lodged by respondents on July 26, 2004.

PROCEDURAL HISTORY[2]

On direct appeal, petitioner's conviction on count two was reversed, but in all other respects, the judgment was affirmed. California Court of Appeal, case number C036427, order issued on August 27, 2001.

Petitioner filed ten petitions seeking habeas relief in state court:

1. San Joaquin County Superior Court, case number SF 077816B, filed October 22, 2001, denied petitioner's ineffective assistance of counsel claims on February 8, 2002. On September 27, 2002, petitioner filed a petition for Writ of Error Coram Nobis in the same case, raising the same claims. That petition was denied on January 3, 2003.

2. California Court of Appeal, case number C040958, filed April 22, 2002, denied April 25, 2002, without comment.

3. California Supreme Court, case number S109523, filed August 30, 2002, denied April 9, 2003, without comment.

4. California Court of Appeal, case number C042243, filed September 26, 2002, denied October 10, 2002, without comment.

5. San Joaquin County Superior Court, case number SF 077816B, filed February 7, 2003, denied petitioner's claims of prosecutorial misconduct on March 7, 2003.

6. California Court of Appeal, case number C043267, filed February 10, 2003, denied February 20, 2003, denied on the grounds that the petition was "repetitive to a petition previously denied on the merits. (*In re Miller* (1941) 17 Cal.2d 734, 734; *In re Martin* (1987) 44 Cal.3rd 1, 27, fn.3.)." (Id.)

7. California Supreme Court, case number S114128, filed March 10, 2003, denied October 29, 2003, citing see *In re Clark* (1993) 5 Cal.4th 750.

/////

[2] Respondents lodged copies of petitioner's state court records on July 26, 2004. Citations to state court opinions may be found within that material.

8. San Joaquin County Superior Court, case number SF077816B, filed May 13, 2003, denied June 12, 2003, finding petitioner had been properly sentenced.

9. California Court of Appeal, case number C044561, filed July 21, 2003, denied July 31, 2003, without comment.

10. San Joaquin County Superior Court, case number SF077816B, filed August 11, 2003, denied September 3, 2003, finding that the giving CALJIC No. 17.41 did not warrant reversal.

On February 2, 2004, petitioner filed two documents entitled "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." (Docket Nos. 1 and 2.) Docket no. 2 contains petitioner's exhibits to his petition as well as memoranda of points and authorities in support of his petition. Respondents filed an answer on July 22, 2004. On February 5, 2007, the transcript of the February 1, 2000 Marsden hearing was filed under seal. Petitioner was granted an extension of time to file a traverse, which was filed on March 12, 2007.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

A. First and Second Claims

Petitioner claims he received ineffective assistance of counsel because trial counsel failed to investigate and locate an alibi witness, Kasandra Davis, failed to communicate with petitioner, and failed to investigate and call certain witnesses who would support petitioner's theory that he had been misidentified as a perpetrator herein, thus violating his Sixth Amendment rights.[3]

---

[3] Plaintiff referenced certain exhibits supportive of his ineffective assistance of counsel claims in his initial filing (docket no. 2), but failed to include the exhibits among those provided. However, the exhibits he cited are appended to his petition submitted to the California Supreme Court in case number S114128.

The state superior court addressed these claims on two separate occasions. Initially, the court found petitioner had failed to state with particularity the facts upon which the petition was based, finding petitioner had failed to provide specific information regarding the evidence he alleged was not presented due to the ineffectiveness of counsel, citing In re Swain, 34 C.2d 300 (1949). (Case No. SF 077816B, February 8, 2002 denial.) The state court next addressed the merits of this claim in the context of a petition for writ of error coram nobis:

> Petitioner now contends his conviction for assault with a deadly weapon should also be overturned because he received ineffective assistance of counsel. Petitioner first contends he received ineffective representation because his attorney failed to recall certain eyewitnesses, most specifically the witness Theresa Montoya, to question them as to what one of the individuals who assaulted the victims was wearing. One witness indicated one of the attackers was wearing a Raiders' jacket. Petitioner also contends the trial court abused its discretion when it ruled, during a *Marsden*[4] hearing, that petitioner's attorney had the discretion whether to recall said witnesses.
>
> The court has reviewed the *Marsden* hearing submitted by petitioner and finds that his attorney's decision not to recall said witnesses was based on sound tactical reasons. Montoya testified she did not see the individual later identified by others as defendant. Recalling her could not have helped petitioner and risked the possibility she would say something that could harm his case.
>
> Petitioner also contends he received ineffective assistance of counsel in that his attorney failed to interview his parents as potential witnesses and failed to introduce a booking photo which showed defendant did not look like the man described by the victims as their attacker.
>
> The booking photo was taken 18 days after the offense was committed and letters signed by petitioner's parents indicate petitioner had a clean shaven head, mustache and goatee, which did not match the victims' descriptions that their attacker had a short Afro and no beard. The disparity between petitioner's description and that of the attacker was demonstrated by other evidence. The prosecution's own witness, petitioner's cousin, testified he had spent the day of the offense with petitioner, that petitioner had a shaved head, had a beard, and did not own a Raider's jacket. The

---

[4] This citation refers to a motion for substitution of counsel pursuant to People v. Marsden, 2 Cal. 3d 118 (1970)

> attorney's failure to call other, cumulative witnesses whose testimony might not have been completely predictable was a reasonable tactical decision. Although the booking photo might have been helpful, the failure to offer it did not prejudice petitioner, as the booking photo was taken 18 days after the offense and a description of petitioner near the time of the offense had already been provided.

In the Matter of the Petition of Kevin Fields for Writ of Error Coram Nobis, Case No. SF 077816B, order filed January 3, 2003, at 1-2.

B. Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. It has been recognized that "the adversarial process will not function normally unless the defense team has done a proper investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998)(citing Kimmelman, 477 U.S. at 384). Therefore, counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted). On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691). See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the

/////

/////

government's case.'" Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)). See also Hayes v. Woodford, 301 F.3d 1054, 1070 (9th Cir. 2002).

Petitioner contends he notified trial counsel at the time of defense counsel's appointment that there existed an alibi witness by the name of Kasandra Davis. (Petition at 4.) Petitioner claims he provided counsel with Ms. Davis' name, age, height, approximate weight, the make and model and year of her car and the name of the street she resided on. (Id.) Petitioner contends that defense counsel's failure to investigate this potential witness by the preliminary hearing amounted to incompetence of counsel.

Petitioner was interviewed by the police on October 27, 1999. (Petitioner's Petition, filed in Case No. S114128, Ex. C [lodged July 26, 2004].) He stated he remembered driving a blue Hyundai on October 12, 1999, but claimed he was drunk and parked the car in the 400 block of north California Street across from Tom's Market. (Id.) Petitioner said he saw Cassandra Davis, B/F 35, 5'2-5'3, 145, Blk/Brn) who "lives in area of Comstock in north Stockton and drives a gray colored Nissan, 2 dr." (Id.) Petitioner added that he did not know Davis' address, phone number, etc., and did not know where Davis works or the type of job she has. (Id.)

The trial court held three *in camera* hearings, the last of which occurred after the verdict had been rendered. At the first Marsden hearing, held February 1, 2000, the court heard from petitioner's defense counsel. Defense counsel explained that he had only visited petitioner once in jail and that he had difficulty with petitioner who continued to protest his innocence and stated he would not take any deal. (Marsden Motion Transcript (hereafter "MMT") at 20.) Counsel stated he had reviewed a statement by Mr. Albert Brown, petitioner's cousin, who stated "either I smoked someone or we smoked someone or just someone got smoked." (MMT at 21.) Defense counsel told the trial court Mr. Brown was not someone trial counsel wanted to call to testify on petitioner's behalf. (Id.) Defense counsel confirmed that Mr. Lee Parker had been

subpoenaed for trial by the district attorney. (MMT at 22.) Defense counsel opined that Mr. Parker was not a harmful witness nor a helpful witness. (MMT at 22.) Defense counsel added that petitioner did not give him feedback. (MMT at 23.)

Defense counsel admitted to the trial court that petitioner had asked him to file motions on his behalf, but that this was not a case where a motion to suppress would be appropriate. (MMT at 23.) Trial counsel stated he had had conversations with co-counsel who had an investigator and he "had not come up with anything of help." (MMT at 24.)

Defense counsel told the court that during his first and only meeting with petitioner, petitioner and he only discussed the fact that petitioner would refuse to take a deal. (MMT at 25.) Defense counsel confirmed that petitioner did not tell counsel he had an alibi witness. (MMT at 25.)

The judge asked the petitioner many questions, but petitioner did not focus on an alleged alibi witness or a witness named Kasandra Davis. (MMT, *passim*.) Petitioner focused on numerous other potential witnesses and the status of his strikes, and asked for motions to be filed that were of little significance. (Id.; 41.)

On February 15, 2000, the court held another *in camera* hearing, where petitioner raised his concerns that defense counsel refused to call back certain witnesses that petitioner wanted to ask questions about what clothes he was wearing on the date in question. (RT 569-71.) When the trial court inquired, defense counsel explained that petitioner's position at trial was that he was not at the scene, that the witness testified she did not see petitioner, therefore defense counsel did not want to further inquire as to what petitioner might have been wearing because when she was first interviewed by the police she stated she did see petitioner get out of the car. (RT 572.) Defense counsel stated "[t]hat's extremely detrimental to my client, and I don't want to bring it up because the status of the evidence is that she didn't see him." (RT 572.) Defense counsel went on to explain that he did not want to take the chance that one of these witnesses would return to the stand and claim the perpetrator was wearing clothing that would

hurt petitioner's case. (RT 575-76.) The trial court ruled that petitioner and defense counsel had a "difference of opinion of what witness is called and how to cross-examine the witnesses" (RT at 576), and found the witness could not be recalled unless a new and different theory emerged. (RT 577.)

After the trial, on June 19, 2000, the trial court held a third *in camera* hearing. (RT 910-35.) Petitioner protested that defense counsel failed to investigate petitioner's witnesses and failed to emphasize in closing argument that petitioner was six to six feet one inch tall and all the witnesses testified that the perpetrator was five feet six inches tall. (RT 911.) Petitioner stated defense counsel also did not emphasize that petitioner had a bald head when he was booked and not an Afro as reported by police and witnesses. (RT 911.) Petitioner argued defense counsel failed to diligently present a case of mistaken identification. (RT 912.) Petitioner renewed his claims concerning recalling witnesses to the stand. (RT 912.)

After explaining his criminal law experience, defense counsel confirmed that he had not sent out an investigator to talk to witnesses, but had talked to Mr. Parker, a witness, and petitioner's father, and petitioner. (RT 919.) Defense counsel admitted he forgot to use the picture to argue misidentification, but stated during trial there was "oral testimony from prosecution witnesses as I had my client stand up to put him at six, one. My entire – right or wrong, . . . defense, my argument to the jury, was this version of six, one to five, six. So I feel that was adequately represented." (RT 920.) Defense counsel stated that since this evidence had come in through prosecution witnesses, the photo was not necessary. (Id.)

Insofar as recommending petitioner take a deal, defense counsel explained that he told petitioner he could "be found guilty and . . . be exposed to a life sentence that would exceed [his] life expectancy, depending on what the judge would do." (RT 921.)

Petitioner explained that the alibi witness was a girl he needed an investigator to find. (RT 924.) Petitioner stated he knew the street she stayed on (Comstock) and had given the Stockton police the car color and what area it was in. (RT 924.) Petitioner conceded he wasn't

sure about the address. (Id.) When the trial court asked petitioner the name of the alibi witness, petitioner stated "Sandra Davis," and the trial court remarked it was the first time it had "heard anything about Sandra Davis." (RT 925.) Petitioner stated she was named in the police report and she was the girl he left with. (RT 925.)

Defense counsel stated he recalled the name Sandra Davis and confirmed that petitioner told him petitioner had left with her. (RT 928.) However, defense counsel stated he asked petitioner how to find Ms. Davis. (RT 928.) Defense counsel framed the issue as whether he should have gotten an investigator to find Ms. Davis. At this point, defense counsel stated his investigator located her somewhere out north, north of Hammer Lane, south of Eight Mile Road.[5] (RT 928.) The trial court asked defense counsel whether he spoke to Ms. Davis personally, and defense counsel responded: "No, sir. Your Honor, there's probably eight thousand homes. I mean, not a street." (RT 928.) "Not a number, not a telephone number, not a description. If I could have gotten the street or block I could . . . get a guy going out there knocking. There was no way we could find her." (RT 929.) When asked whether petitioner had provided information relative to location, defense counsel responded: "Only her name and the general area in the community in which she lived, which was north, central side, as I recall." (RT 929.) Petitioner objected that detailed information was contained in the police report. (RT 929.) Petitioner stated he told police she drove a gray Nissan and lived on Comstock, which was a little strip, a short block, with houses on both sides. (RT 930.) Petitioner argued that if you rode up the block you wouldn't see two Nissans on that street of the same color. (Id.)

The trial court denied petitioner's Marsden motion, finding defense counsel was credible with regard to the alibi witness and the witnesses who were asked to be called by

---

[5] It is not clear from the record whether this statement means defense counsel's investigator found Ms. Davis after the trial concluded or whether it means defense counsel had approximated her location to north of Hammer Lane, south of Eight Mile Road. The trial court did not follow up on this. However, there is no unequivocal statement in the record that Ms. Davis was actually located and interviewed.

petitioner. (RT 931.) Petitioner then made a Faretta[6] motion. (RT 931.) The trial court found that defense counsel had represented petitioner appropriately and that as to the alibi witnesses, "the information was not given to the particular attorney with respect to any specificity." (RT 931.) The trial court further found there was sufficient evidence in the record to support petitioner's eye witness identification defense. (RT 932.) "There was ample evidence in the particular evidence that indicated [petitioner] was six foot, one, and he did not have the Afro that the witnesses indicated he had. And that was tried to the jurors then." (RT 932.) The trial court declined to find defense counsel had been working as a prosecutor when he told petitioner the prosecution had offered petitioner a ten year sentence outside the presence of the jury. (RT 933.)

The court has reviewed the record and does not find that petitioner provided specific information sufficient to locate Ms. Davis. In addition, petitioner has not provided a declaration from Ms. Davis, nor has he provided any further specificity about what Ms. Davis might have said.

Moreover, if Ms. Davis was truly an alibi witness, it is odd that petitioner did not raise her name during the first Marsden hearing. Petitioner said nothing of any alibi witness during the February 1, 2000 hearing or the February 15, 2000 hearing. Rather, petitioner waited until the June 19, 2000 hearing, after the verdict had been rendered, to object that defense counsel had failed to locate an alibi witness. But even then he focused on numerous other witnesses first, for example, Cynthia Latour and Lee Parker, who were witnesses on the issue of identification, not alibi. (RT 911-14.) Petitioner did not address the issue of his alibi witness specifically until almost halfway into the third hearing (RT 924) and did not mention her name until the trial court asked petitioner to name her. (RT 925.) On this record, the court cannot find petitioner's counsel was ineffective by failing to obtain an investigator to locate Ms. Davis.

---

[6] Faretta v. California, 422 U.S. 806 (1975)("A criminal defendant has a right to self-representation at trial, provided that the defendant is fully informed about the consequences of such action and then knowingly waives the benefits of legal counsel." Sandoval v. Calderon, 241 F.3d 765, 773-74 (9th Cir. 2000) (citing Faretta, at 835).)

Petitioner's claim concerning identification witnesses is similarly unavailing. As the state court found, prosecution witnesses confirmed that the suspect who attacked the victim was 5'6" tall. (RT 234, 238, 252, 258, 629, 633.) Defense counsel had petitioner stand in court to demonstrate petitioner was taller than 5'6". (RT 252.) Peter Pascua testified the assailant had an Afro and no beard. (RT 239.) Mr. Pascua also testified that petitioner looked huskier than at the time of the attack, that petitioner looked "healthier." (RT 260-61.) Mr. Zavala testified he identified petitioner because his teeth were not all correct; his teeth were messed up, missing and crooked. (RT 272-73.) The prosecution asked petitioner to bare his teeth. (RT 273.) Mr. Zavala confirmed petitioner's teeth matched those he witnessed at the scene. (RT 273.) Mr. Zavala testified that he didn't notice what petitioner had been wearing, but that he had an Afro and did not believe he had a beard. (RT 305.) The victim, Coy Williams, testified he did not personally know petitioner. (RT 418.) Mr. Williams testified that petitioner was wearing a black Raiders baseball cap and waist-length jacket. (RT 418-19.)

Lee Parker, petitioner's cousin, testified that petitioner's head was clean-shaven, he had no Afro, and that petitioner had a goatee at the time of the crime. (RT 491.) Mr. Parker also testified that petitioner did not have a Raiders jacket or hat. (RT 492.) Mr. Parker testified that on the day in question petitioner was wearing a black jacket, flannel on the inside, with no insignia. (RT 491.)

Officer Jeffery Tacazon testified that Mr. Pascua described the suspect as 5'6" tall, 160 pounds, in his mid-twenties, with a short Afro. (RT 629.) On redirect exam, Officer Tacazon confirmed that the "one suspect that hit him on the head was the five foot six person." (RT 633.)

Defense counsel focused on misidentification during closing argument. Defense counsel argued that Ms. Montoya testified she did not see who got out of the car; she was unable to identify petitioner. (RT 787.) Defense counsel pointed out the second suspect was 5'6". (RT 790.) Defense counsel argued petitioner had an Afro and no beard, but Mr. Parker testified that

the assailant had a bald head and a beard. (RT 791.) Defense counsel described petitioner as six feet one, and discussed the discrepancies concerning petitioner's appearance and the witnesses' description of the assailant. (RT 791.) Defense counsel reminded the jury that Mr. Pascua testified the assailant was 5'6" with no big Afro and no beard. (RT 792.) Defense counsel argued Mr. Zavala's identification was suspect because he viewed the suspect for only about 15 seconds. (RT 793-94.) Finally, defense counsel closed his argument by again arguing misidentification. (RT 801.)

In addition, the record makes clear that trial counsel chose not to call rebuttal witnesses suggested by petitioner based on tactical decisions. Although petitioner argues there are other things that he thinks counsel should have done, he has failed to establish that they were worthy of counsel's attention or that counsel in fact failed to investigate these areas. Petitioner's counsel had benefit of investigation performed by the investigator hired by co-counsel, but that information was not particularly helpful. Defense counsel testified that he had no good faith basis to bring many of the motions petitioner sought. As explained above, this court must presume that counsel's conduct fell within the wide range of reasonable representation. Petitioner has not rebutted this presumption with any credible evidence.

With regard to failure to communicate, petitioner has failed to demonstrate what additional communication would have assisted in his defense. The record reflects that petitioner was not particularly forthcoming with counsel, focusing on his refusal to accept a plea bargain rather than attempting to assist in his own defense. Petitioner has failed to provide the specificity necessary to demonstrate ineffective assistance on this claim.

Petitioner has failed to establish either that his trial counsel's representation was objectively unreasonable or that there is a reasonable probability that the outcome of the proceedings against him would have been any different had counsel performed a more thorough investigation. Specifically, petitioner has failed to present any specific evidence of what such an

/////

investigation might have disclosed, and he has failed to establish that there is a reasonable likelihood that the outcome of his case would have been different.

The state court's rejection of petitioner's first and second claims for relief were neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's first and second claims for relief should be denied.

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 25, 2006.

UNITED STATES MAGISTRATE JUDGE

/001;fiel0454.157